**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 13 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff - Appellee, | No. 03-3335 |
| v. | (D. Kansas) |
| EDUARDO GUTIERREZ-AGUINIGA, | (D.C. No. 03-CR-10038-WEB) |
| Defendant - Appellant. | |

**ORDER AND JUDGMENT**[*]

Before **TACHA**, **ANDERSON**, and **BALDOCK**, Circuit Judges.

Defendant/Appellant Eduardo Gutierrez-Aguiniga was found guilty following a jury trial of one count of conspiracy to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. § 846, one count of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1), and one count of possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c). He was sentenced to 352

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

months' imprisonment. We affirmed his conviction and sentence. United States v. Gutierrez-Aguiniga, 101 Fed. Appx. 328 (10th Cir. June 15, 2004) (unpublished).[1] The Supreme Court summarily reversed and remanded our decision for further consideration in light of United States v. Booker, 125 S. Ct. 738 (2005). Gutierrez-Aguiniga v. United States, 125 S. Ct. 1680 (2005). At our request, the parties have filed supplemental briefs on the applicability of Booker and subsequent Tenth Circuit cases. We REINSTATE all non-sentencing portions of our previous opinion, and we AFFIRM his sentence.

On February 20, 2003, a Drug Enforcement Administration ("DEA") task force obtained a search warrant for 1828 North Payne, Wichita, Kansas. On February 28, law enforcement personnel arrived at that address to execute the search warrant. In executing the search warrant, officers found Gutierrez-Aguiniga standing in the master bedroom of the house, and encountered his three co-defendants and another individual at various locations in and around the house. They also found materials with methamphetamine residue on them, a digital scale, mixtures containing methamphetamine, pistol ammunition, photographs of Gutierrez-Aguiniga with a revolver stuck in the waistband of his pants, and

---

[1]In affirming his conviction and sentence, we granted Gutierrez-Aguiniga's counsel's request to withdraw as counsel pursuant to Anders v. California, 386 U.S. 738 (1967), on the ground that, "after a conscientious examination" of his client's case, counsel found the appeal to be "wholly frivolous." Gutierrez-Aguiniga, 101 Fed. Appx. at 329 (quoting Anders, 386 U.S. at 744).

baggies of a white powdery substance believed to be methamphetamine. In the living room, they found a loaded .44 magnum revolver under a sofa seat cushion. They also found a bucket of powdered "MSM," a veterinary supplement commonly used to cut methamphetamine. A search of two vehicles on the premises revealed three baggies of methamphetamine concealed in a speaker box in one and altered headrests in the other.

Prior to the trial, all of Gutierrez-Aguiniga's co-defendants pled guilty, including one, Jorge Gutierrez-Nunez, who agreed to testify against Gutierrez-Aguiniga. At trial, he testified that, at the behest of Gutierrez-Aguiniga, he had both purchased MSM to mix with methamphetamine and had packaged money to purchase methamphetamine and placed them in the headrests of one of the vehicles. Joan Patterson, a defendant in another trial, testified at Gutierrez-Aguiniga's trial that she had met Gutierrez-Aguiniga in March of 2002 and bought methamphetamine from him two to four times per week. She also testified that he advanced her methamphetamine after she was arrested.

At his trial, Gutierrez-Aguiniga testified that, when he arrived home from California some ten minutes before the police executed the search warrant, he noticed the back window of his house being broken. He further testified that he was unaware of the existence of any methamphetamine in his house or car and he denied ever selling it. He also testified that he had been working at Cessna

Aircraft to support his family, although a Cessna personnel representative testified that he had reviewed Cessna's employment records and nobody with the social security number matching Gutierrez-Aguiniga was ever employed at Cessna. A subcontractor for Cessna testified that he located an employee with the same social security number as Gutierrez-Aguiniga but that the picture identification of that person did not match Gutierrez-Aguiniga.

At sentencing, the district court enhanced Gutierrez-Aguiniga's base offense level of 36 under the United States Sentencing Commission, Guidelines Manual ("USSG"), by two points because Gutierrez-Aguiniga was an organizer/leader of the drug conspiracy and by another two points for obstruction of justice based upon false testimony Gutierrez-Aguiniga gave concerning his purported employment, his involvement in transporting methamphetamine from California, his whereabouts prior to the execution of the search warrant, and his testimony that he did not see any drugs in his house, despite "evidence at trial [that] showed overwhelmingly that the defendant's testimony on these matters was false." Mem. and Order at 2, R. Vol. I, tab 148. This resulted in a total offense level of 40 which, with a criminal history category of I, yielded a Guideline range of 292-365 months. Without those two enhancements, Gutierrez-Aguiniga's Guideline range would have been 188-235 months. With only one of the enhancements, his Guideline range would have been 235-293 months. He was

sentenced to a total of 352 months:  292 months on each of the counts involving drugs, to be served concurrently, and a consecutive 60-month sentence on the possession of a firearm count.[2]

As the Supreme Court made clear in <u>Booker</u>, such enhancements, mandatorily imposed based on judge-found facts, violate the Sixth Amendment. <u>Booker</u>, 125 S. Ct. at 756 ("Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."); <u>United States v. Bush</u>, No. 03-4224, __ F.3d __, 2005 WL 950650, at *11 (10th Cir. Apr. 26, 2005).  To remedy this constitutional infirmity, the Court rendered the Guidelines advisory.

Although Gutierrez-Aguiniga contested the evidentiary basis for the judge-found facts, he did not argue at trial or sentencing that the use of the Guidelines was unconstitutional.  Because he failed to raise that issue below, we review the district court's sentencing decision for plain error.  <u>Bush</u>, 2005 WL 950650, at *11; <u>United States v. Dazey</u>, 403 F.3d 1147, 1174 (10th Cir. 2005); <u>United States v. Gonzalez-Huerta</u>, 403 F.3d 727, 732 (10th Cir. 2005) (en banc).  "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial

---

[2]By statute, the sentence imposed under § 924(c) must be served consecutively to any other sentence.  18 U.S.C. § 924(c)(1)(D)(ii).

rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." Gonzalez-Huerta, 403 F.3d at 732 (further quotation omitted). We apply this analysis "less rigidly when reviewing a potential constitutional error." Dazey, 403 F.3d at 1174 (further quotation omitted).

As indicated, the district court's application of then-mandatory Guidelines and reliance upon judge-found facts to increase Gutierrez-Aguiniga's sentence beyond the maximum authorized by the jury's verdict violated Gutierrez-Aguiniga's Sixth Amendment rights and therefore was a constitutional error. That error is plain. Id. at 1174-75. We now must determine whether that error affected Gutierrez-Aguiniga's substantial rights.

To show that his substantial rights were affected, Gutierrez-Aguiniga "must show a reasonable probability that the defects in his sentencing altered the result of the proceedings." United States v. Mozee, No. 04-8015, __ F.3d __, 2005 WL 958498, at *7 (10th Cir. Apr. 27, 2005) (internal quotation omitted). We have held that a defendant may make this showing with respect to a constitutional Booker error in at least two ways:

> First, if the defendant shows a reasonable probability that a jury applying a reasonable doubt standard would not have found the same material facts that a judge found by a preponderance of the evidence, then the defendant successfully demonstrates that the error below affected his substantial rights. . . . Second, a defendant may show that the district court's error affected his substantial rights by demonstrating a reasonable probability that, under the specific facts of his case as analyzed under the sentencing factors of 18 U.S.C.

-6-

§ 3553(a), the district court judge would reasonably impose a
sentence outside the Guidelines range.

Dazey, 403 F.3d at 1175 (footnote omitted). The defendant bears the burden to
establish that his substantial rights were affected. Id.

While Gutierrez-Aguiniga's supplemental brief does not address this issue,
we consider whether there is a reasonable probability that a jury applying a
reasonable doubt standard would not have found that he was a leader or organizer
of the drug enterprise or that he obstructed justice.[3] We conclude Gutierrez-
Aguiniga has failed to show that there is such a reasonable probability. With
respect to the obstruction of justice enhancement, the district court heard
argument from both parties about the evidence supporting such an enhancement.

---

[3]In his supplemental pro se brief, the only argument Gutierrez-Aguiniga
seriously pursues is an argument he has never made before—namely, "that the
district court erred by sentencing him under 21 U.S.C. § 841(b)(1)(A)(viii), for a
crime involving more than fifty (50) grams of methamphetamine, because the
drug quantity statute was not charged in the indictment. GUTIERREZ-
AGUINIGA should be resentenced under the Blakely/Booker advisory guideline
regime, under 21 U.S.C. § 841(b)(1)(C) for a crime involving an indeterminate
amount of drugs." Appellant's Supp. Br. at 6. Aside from being untimely, to the
extent this argument challenges the adequacy of the indictment, we have already
rejected Gutierrez-Aguiniga's arguments about the adequacy of the indictment in
our previous opinion in this case, which we have reinstated in pertinent part. To
the extent he argues that there was a Sixth Amendment error in the calculation of
the drug quantity, he never made any argument before the district court
concerning drug quantity and he fails even now to develop such an argument,
other than to claim that the indictment was deficient.

The district court judge, who had observed Gutierrez-Aguiniga throughout the trial, recounted that:

> [t]he defendant testified falsely at trial that he did not intentionally transport methamphetamine back to California in a Ford Contour; that on the day he was arrested he did not see any drugs in his house. The evidence at trial showed overwhelmingly that the defendant's testimony on these matters and others was false.

R. Vol. VI at 17-18. Gutierrez-Aguiniga has failed to show that a jury applying a reasonable doubt standard would conclude any differently.

We reach the same conclusion with respect to the enhancement for being a leader or organizer. Again, the district court heard argument from both sides on the evidence supporting such an enhancement, and concluded "[t]he evidence at trial showed that the defendant was in fact a supervisor or leader of his co-defendants; that he recruited and directed other individuals including Mr. Gutierrez-Nunez in the commission of the offense." Id. at 18. The record overwhelmingly supports that finding as well. Furthermore, nothing else in the record indicates that the district court, considering Gutierrez-Aguiniga's background, conduct and offense, in light of the 18 U.S.C. § 3553(a) sentencing factors, would impose a different sentence under a discretionary sentencing regime. Gutierrez-Aguiniga has accordingly failed to demonstrate that his substantial rights were affected by the district court's sentencing error.

Were we to assume arguendo that Gutierrez-Aguiniga had established that his substantial rights were affected, we would turn to the fourth prong of plain error review and consider whether he has demonstrated that the "Booker error seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Clifton, No. 04-2046, ___ F. 3d ____, 2005 WL 941581, at *6 (10th Cir. Apr. 25, 2005); Gonzalez-Huerta, 403 F.3d at 736. Among the non-exclusive factors we may consider in determining whether to exercise our discretion under the fourth plain-error prong are (1) whether the Booker error is a constitutional error, which "will be more freely noticed," Clifton, 2005 WL 941581, at *6; (2) "the strength or lack of evidence supporting the defendant's sentence under the Guidelines," id.; and (3) "whether the Booker error substantially increased the defendant's sentence." Id. While the error here was constitutional, the evidence supporting the enhancements was substantial and the enhancements increased Gutierrez-Aguiniga's offense level by only four levels. By contrast, we have noticed a constitutional Booker error where the judge-found facts authorized a twenty-level enhancement, Dazey, 403 F.3d at 1179, and where the district court judge expressly stated that he would have assessed a ten-level lower offense level but for the mandatory application of the Guidelines. Clifton, 2005 WL 941581, at *7. Gutierrez-Aguiniga therefore

cannot show that the district court's sentencing error seriously affected the fairness, integrity, or public reputation of judicial proceedings.

For the foregoing reasons, we AFFIRM Gutierrez-Aguiniga's sentence.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge